■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MELVIN TARLETON, Appellant.—Judgment of the Supreme Court, New York County (Jay Gold, J.), rendered on June 28, 1989, convicting defendant, following a non-jury trial, of murder in the second degree and criminal possession of a weapon in the second and third degrees, and sentencing him to concurrent terms of imprisonment of from fifteen years to life, three to nine years and one to three years, respectively, is unanimously affirmed.

After defendant, along with two others, was taken into custody at approximately 11:30 P.M. for a homicide that had just occurred at 110th Street in Manhattan, he was transported to the 28th Precinct. Once there, defendant was placed, while handcuffed, into an interview room where he remained throughout the night. During the course of some five to six hours, police detectives questioned a number of witnesses to the killing, as well as Derrick Morgan, one of the men arrested with defendant. Since their investigation led the police to conclude that defendant was the actual shooter, he was, for the most part, left sitting alone in the interview room except for when he was escorted to the bathroom. Detective Michael Burke went into the room several times and, on one occasion, commented that defendant's friends had given him up as the shooter. Then, at approximately 8:00 A.M., Detective Scott Jaffer entered the interview room, introduced himself and told defendant that his companions had implicated him as the individual who did the shooting. Detective Jaffer also stated that the police had recovered a nine millimeter gun that purportedly belonged to defendant. He thereupon asked defendant if he were willing to furnish his version of what had happened. Defendant hesitated for about five minutes before agreeing to talk. Detective Jaffer proceeded to inform defendant of his *Miranda* rights, which the latter waived. After interrogating defendant about the facts of the killing, Detective Jaffer had defendant repeat his account. According to defendant, he shot the victim in self-defense. Detective Jaffer, who had written down the facts in long hand, read the

statement back to defendant so that he could offer any necessary corrections and also had defendant examine it himself. Defendant then signed the statement. At sometime between 9:30 and 10:00 A.M., the District Attorney arrived and discussed the matter with the detectives for about one-half hour. At around 11:00 A.M., a video statement was taken from defendant. On this occasion, he was once more advised of his *Miranda* rights prior to providing any information, and he again waived them.

There is no merit to defendant's contention that his written and videotaped statements should have been suppressed as the product of a prolonged detention in which he was only read the *Miranda* warnings for the first time after he had already agreed to make a statement. Notwithstanding that defendant was kept in a separate interview room during some eight hours before he was apprised of his *Miranda* rights, defendant was never interrogated concerning the homicide at any time before those rights were administered. Thus, in distinct contrast to what occurred in both *People v Anderson* 178 AD2d 605), and *People v Robertson* (133 AD2d 355), where the suspect in each case was questioned about the subject crime during an extended custodial detention and made incriminating statements before ever having received *Miranda* warnings, all that occurred herein were observations by two detectives that defendant's friends had identified him as the shooter. There is simply no authority for the proposition that any and all non-interrogatory comments made by police officers in an atmosphere that is not particularly coercive must always be preceded by *Miranda* warnings. In *People v Moore* (96 AD2d 1044), the defendant therein, unlike in the instant situation, made a statement before complete *Miranda* rights had been given in response to an officer's remark that he had been implicated in the robbery for which his three codefendants had been arrested. Defendant here, however, was not only never directly questioned by the police regarding the shooting in advance of receiving his *Miranda* warnings, but made no statements whatever until his rights had been properly and fully explained to him, and he had waived those rights. Under these circumstances, the Supreme Court appropriately declined to suppress defendant's statements. Concur—Carro, J. P., Milonas, Asch and Smith, JJ.