■ The People of the State of New York, Respondent, v Michael Rutledge, Appellant. [984 NYS2d 61]—

Judgment, Supreme Court, New York County (Ruth Pickholz, J., at hearing; Laura A. Ward, J., at plea and sentencing), rendered September 7, 2010, convicting defendant of manslaughter in the first degree, and sentencing him, as a second felony offender, to a term of 17 years, unanimously affirmed.

Defendant's purported waiver of his right to appeal was invalid for the same reasons found in *People v Braithwaite* (73 AD3d 656 [1st Dept 2010], *lv denied* 15 NY3d 849 [2010]).

The Supreme Court properly denied defendant's motion to suppress statements made to the police since the totality of the circumstances demonstrates that the People met their burden of establishing the voluntariness of the statements (*see United States v Anderson,* 929 F2d 96, 99 [2d Cir 1991]; *People v Anderson,* 42 NY2d 35, 38 [1977]). The detective who spoke to defendant at the precinct after his arrest candidly testified at the suppression hearing that, prior to administering *Miranda* warnings, for a period of approximately 20 minutes, he urged defendant to talk to the police and "gave him several reasons why he should." The detective properly conveyed to defendant that he knew defendant was involved in the crime, stating "point blank" that the evidence against defendant was strong,

including videotape and eyewitness evidence. He urged defendant to take advantage of "your chance" to speak before the other suspects implicated him (*see People v Vasquez*, 235 AD2d 322 [1st Dept 1997], *affd* 90 NY2d 972 [1997]; *People v Tarleton*, 184 AD2d 463 [1st Dept 1992], *lv denied* 80 NY2d 910 [1992]; *People v May*, 100 AD3d 1411 [4th Dept 2012], *lv denied* 20 NY3d 1063 [2013]). The detective also told defendant that cooperation could be beneficial and that the detective would "call the D.A." once defendant "put down" his story. After defendant indicated that he wanted to talk, he was read his *Miranda* rights, waived them, and proceeded to make several written statement and one videotaped statement.

There is nothing in the record to indicate that defendant's will was overborne or that the detective's preliminary remarks tricked, cajoled or threatened him into waiving his *Miranda* rights. Defendant was no novice to the criminal justice system (*see United States v Anderson*, 929 F2d at 99). Indeed, defendant's initial statement denied any involvement in the crime. His subsequent statements, made after again being properly given his *Miranda* rights, were voluntarily made (*People v Vasquez*, 235 AD2d at 322).

*People v Thomas* (22 NY3d 629 [2014]) does not compel a different result. *Thomas* involved a defendant who was interrogated for a total of approximately 9½ hours, broken into two segments of 2 and 7½ hours, all of which were videotaped. At the end of the interrogation, defendant demonstrated to police how he threw the infant victim from over his head to a low-lying mattress. This videotape was the only evidence that defendant had caused his son's death.

During this interrogation, the police told defendant a number of quasi and outright falsehoods. For example, he was told at least 21 times that his son was still alive and that by telling the police how he was injured it would assist the treating physicians in providing care to the infant. Defendant was also told that if he continued to deny responsibility for his son's injuries, the police would arrest his wife. Finally, defendant was told 67 times the incident could be viewed as merely an accident and that if he made full disclosure, he would not be arrested (14 times) and would be permitted to go home (eight times).

The Court of Appeals found that "the set of highly coercive deceptions" utilized by the police "were of a kind sufficiently potent to nullify individual judgment in any ordinarily resolute person and were manifestly lethal to self-determination when deployed against defendant, an unsophisticated individual without experience in the criminal justice system" (22 NY3d at 642).

None of those factors are present in this case. As noted, defendant was experienced in the criminal justice system. His will and judgment were clearly not overborne by the detective's initial self-described "spiel" about the evidence in the case and the potential benefits to defendant of cooperation. There is no indication in this record that the detective's characterization of the evidence, including the representation that defendant was one of a group of individuals identified on a surveillance video, and that on that video he was holding a cane that witnesses to the crime said was used in the assault on the victim, was inaccurate or fabricated. His motion to suppress these statements was therefore properly denied. Concur—Mazzarelli, J.P., Sweeny, Andrias, Manzanet-Daniels and Kapnick, JJ.